RANNEY *against* EDWARDS.

*A* and *B*, having unsettled accounts between them, submitted such accounts to the arbitrament of *C* and *D*; and in case they should not agree, they were authorized to select a third person, who, either individually, or in conjunction with the other two, should determine the cause. *C* and *D*, after hearing the parties and examining their books and accounts, were unable to agree upon a part of the matters in controversy; and thereupon they selected *E*, as a third person to act with them in making the award. *C* and *D* then stated to *E* the claims, accounts and evidence of the parties, relative to the matters about which they disagreed; after which *C*, *D* and *E* made their award in favour of *B*. *A* and *B* had no notice of the appointment of *E*, until after the publication of the award; nor had they, or either of them, any hearing before the arbitrators, after such appointment; but *C* and *D*, in omitting to give such notice, and in making their statement to *E*, acted under a sense of duty, and were not guilty of any fraud, concealment or partiality. On a bill in chancery, brought by *A* against *B*, to have the award set aside, it was held, that no sufficient cause was shown for such an interference, and the bill was dismissed. [One judge dissenting.]

*It seems*, that where the submission is to two arbitrators, with power, in case of

*Middlesex,*
*July, 1845.*

Ranney
*v.*
Edwards.

disagreement, to select a third person to act conjointly with them, the necessity of a re-hearing, in the absence of any express request, by one or both of the parties, is a matter resting in the sound discretion of the arbitrators; but if such request be made, it is their duty to comply with it.

THIS was a bill in chancery, to set aside an award and to restrain the defendant from proceedings thereon at law.

A copartnership having existed between the plaintiff and and defendant, whose mutual accounts relating to the concerns of such copartnership had amounted to a large sum, and had never been settled, they, on the 4th of *April*, 1843, for the purpose of having a settlement thereof, entered into the following agreement in writing : " Whereas a copartnership has existed, or now exists, between *William Ranney* and *Bulkley Edwards*, and the books and accounts of said copartnership have never been finally settled ; we, the undersigned, to the end that said books and accounts, of whatever name or description, pertaining to said firm, may be finally adjusted and settled, hereby agree to submit the same to *Selden G. Ely* and *David Edwards*, and in case they do not agree, they may select a third person, who, either individually or in conjunction with the other two, shall determine the same ; and whatever difference shall be determined upon, by said referees, we, the undersigned, hereby obligate and bind ourselves, individually, in the sum of 500 dollars, that whichever shall, by the said referees, be found indebted to the other, to pay, on demand, to the other, the sum or sums so found due. In witness whereof, we have hereunto set our hands, this 4th day of *April*, 1843.    *Bulkley Edwards.*
*William Ranney.*"

*S. G. Ely* and *D. Edwards* undertook the trust and burden of such arbitrament, and thereupon heard the claims and evidence of the parties, and examined their books and accounts, and then adjourned for the purpose of making up their award. Being unable to agree upon a part of the items in controversy, they, in pursuance of the authority conferred upon them by the submission, selected *Eben Wilcox*, as a third person, to act with them in making the award, and sent for him to meet them, for that purpose ; which he accordingly did. *S. G. Ely* and *D. Edwards* then, in the absence of the plaintiff and defendant, exhibited the accounts of the parties to *Wilcox*, and stated to him the evidence and claims relating

to the items about which they disagreed; after which the three arbitrators made and published the following award: "The undersigned, to whom was referred the adjustment and settlement of certain accounts between *William Ranney* and *Bulkley Edwards*, having examined the same, find due to said *Edwards*, from said *Ranney*, the sum of 122 dollars, 27 cents. *Middletown, April* 15th, 1843. *Selden G. Ely,*

*David Edwards,*

*Eben Wilcox.*"

Neither the three arbitrators, nor either of them, ever gave to the plaintiff any notice of the appointment of *Wilcox*, until after the award was published; nor were the parties, or either of them, ever heard before the arbitrators, after the appointment of *Wilcox;* and the plaintiff had no knowledge of such appointment until after the award was made. All the knowledge which *Wilcox* had of the matters in controversy, was communicated to him, by the other arbitrators. But they, in omitting to give notice to the parties of the appointment of *Wilcox*, or in making their statements to him of the claims of the parties and the evidence adduced before them, were not guilty of any fraud, concealment or partiality; on the contrary, they acted in conformity with what they believed to be their duty under the submission.

The case was reserved for the advice of this court, as to what decree ought to be passed.

*Baldwin* and *Barnes*, for the plaintiff, contended, That upon the facts found, he was entitled to a decree setting aside the award. In support of this position, they urged the following considerations. 1. That it is a cardinal principle in the administration of justice, that the parties to a cause shall have a day in court, and an opportunity for a full and impartial hearing. This rule (which requires no authorities to sustain it,) was disregarded, by the arbitrators. They gave to the parties no notice of the appointment of an umpire, and no opportunity to be heard before him.

2. That it is a rule equally general and imperative, in the doctrine of trials, that the best attainable evidence must be adduced to prove every disputed fact. 3 *Bla. Com.* 368. 1 *Stark. Ev.* 389. This rule was violated, by requiring the umpire to decide on the evidence reported by the arbitrators,

Middlesex,
July, 1845.

Ranney
v.
Edwards.

who were themselves divided in opinion as to the import and effect of the testimony, which they had heard, and which, under the influence of conflicting opinions, they undertook to report.

3. That the submission did not authorize the arbitrators, in case of disagreement, to select an umpire and to report the testimony to him, but, on the contrary, it clearly implied, that, in such a case, the parties should be heard again before the three arbitrators, or before the umpire alone. If a different construction is claimed, on the ground that the parties did not *request* the arbitrators, when they retired for consultation, to give them notice of the appointment of an umpire, and to allow a further hearing, the answer is obvious. There was no propriety in making such a request, until it was ascertained that the arbitrators could not agree. It was not demanded, by the terms of the submission. Notice to the parties by the arbitrators, that they could not agree, was indispensably requisite.

4. That it is the duty of arbitrators to give the parties a fair opportunity, on reasonable notice, to be heard ; otherwise, their award will be a nullity. *Kyd*, 101. 1 *Sw. Dig.* 467. *Peters* v. *Newkirk*, 6 *Cowen*, 103. It is not easy to see why the same duty is not incumbent on the umpire, unless he is supposed, by force of his appointment, to possess the powers and the skill of the Emperor *Claudius* : " *Quo non alius potuit citius discere causas, unâ tantum parte audâ, sæpe et neutrâ.*"

5. That if the submission (as in the present case,) does not permit the umpire to take the testimony from the other two arbitrators, his duty is, in all respects, the same as theirs. *Kyd*, 101. *Falconer* v. *Montgomery*, 4 *Dal. R.* 232. *Passmore* v. *Pettit* & al. *Id.* 271. These cases are directly in point, to show, that the umpire should hear the cause himself, and not rely on the reports of the other arbitrators. Such is the rule of common sense. *Kyd*, it is true, after stating the rule, inclines to modify it ; but he cites no authority, except the case of *Hall* v. *Lawrence*, 4 *Term R.* 589., which is inapplicable, because the court, in that case, refused to set aside the award, on the ground that no application was made to the umpire to hear the witnesses before he made the award. In the present case, no application could be made ; since the

parties knew nothing of the appointment of the umpire until after the award was made.

*Middlesex*, July, 1845.

Ranney *v.* Edwards.

*Wightman*, for the defendant, after a concise statement of the proceedings of the arbitrators, and admitting, that if the parties, or either of them, had *requested* a re-hearing, after the appointment of the "third person" mentioned in the submission, it would have been the duty of the arbitrators to comply with such request, contended, That in the absence of any intimation to that effect before the publication of the award, the ultimate determination, made with the concurrence of all the arbitrators, under a sense of duty, and without fraud, concealment or partiality, was binding upon the parties, and ought not to be set aside. 2 *Wms. Saund.* 133. *c. in notis. Hall* v. *Lawrence*, 4 *Term R.* 589. *Tunno* v. *Bird*, 5 *B. & Adol.* 488. (27 *E. C. L.* 107.) In re *Jenkins* & ux., 1 *Dowl. Prac. Ca.* 276. *N. S. Salkeld* v. *Slater* & al. 12 *Ad. & Ell.* 767. (40 *E. C. L.* 189.) *Sharp* v. *Lipsey*, 2 *Bai. R.* 113. *Finney's* exrs. v. *Miller*, 1 *Bai. R.* 81. 2 *Petersd. Abr.* 143. *Kyd on Awards*, 63, 4. 102. *Watson on Arbit.* 64. 170. *Caldwell on Arbit.* 42. It is quite too much to allow a party to lie by, and take the chance of an award in his favour, and then, if it is against him, have it set aside, to take another chance, on a re-hearing.

WAITE, J. With respect to the question, how far it is the duty of an umpire, in all cases, to go, after the cause has been fully heard by the arbitrators, in relation to a re-hearing, before he makes his award, the rule, at least in *England*, seems not to be very well settled.

In the case of *Hall* v. *Lawrence*, the parties having referred all matters in difference to the award of two arbitrators, or in case of their disagreeing, of an umpire, the arbitrators regularly heard all the evidence, but disagreeing, stated this evidence to the umpire, on which he made his award, without re-examining the witnesses. After he had made the award, the party against whom it was made, applied to him to hear the evidence himself, and on his refusing, moved the court to set aside the award. But the court thought, that, as no application was made to the umpire to examine the witnesses before he had made his award, the rule should be discharged.

4 *Term R.* 589. This case is very briefly reported, and it does not distinctly appear, whether the party had, or had not, knowledge of the appointment of the umpire, or the course he was pursuing before the award was made.

The question subsequently came before the supreme court of *Pennsylvania,* and that court, in two cases, held, that it was the duty of the umpire to hear the cause himself, and not rely upon the reports of the arbitrators. *Falconer* v. *Montgomery,* 4 *Dal. R.* 232. *Passmore* v. *Pettit* & al. *Id.* 271. So that the rule upon this subject is probably well settled in that state.

In a recent case before the court of *King's Bench* in *England,* an application was made to set aside the award of an umpire. One of the reasons assigned for the application, was, that he had not himself heard the parties. It appeared, that, in pursuance of the terms of the submission, he was appointed before the arbitrators entered upon the reference. He attended with them, and heard a part of the cause, and then left, saying, that if he were called in as umpire, and on receiving the statement of the arbitrators, it should appear to him necessary to obtain further evidence, he would call a meeting of all the parties. The arbitrators went on with the reference, and finally separated, without having agreed upon any award. They afterwards furnished the umpire with a statement in detail of the claims of the parties, and he, considering it unnecessary to go into further evidence, or examination of the parties, made his award, without any further hearing. The court refused to set aside the award. *Denman,* C. J. in delivering his opinion, said, " it is not in every case necessary that an umpire should hear the evidence. If, indeed, a necessity had arisen, and the parties had called upon him to examine witnesses, his declining to do so might have been a ground of objection. But here, there was no such refusal. At the time when he left the parties, and declined to hear more, he was not yet umpire. When all the evidence was taken, it was put into his hands; and he had already said, that if he required further information, he would call a meeting. It is said, that *Bird,* (the party complaining,) did not know, that the umpire was going to make his award; but a party must be supposed to look after his own interest : he knew that the depositions were before the umpire, and should,

*Middlesex*,
July, 1845.

Ranney
*v.*
Edwards.

if he thought it necessary, have called upon him to hear evidence." The other judges concurred in this opinion. In re *Tunno* v. *Bird*, 5 *B. & Adol.* 488. (27 *E. C. L.* 107.)

In a still later case, it appeared, that on the hearing before the arbitrators, the witnesses gave conflicting testimony. The counsel for one of the parties applied to the umpire, and requested him to hear the testimony in the cause, when the umpire inquired of him, if he had any new matter or evidence to adduce, saying, that in that case, he was ready to hear it ; to which the counsel replied, that he had not, but insisted on the right of having the testimony given before the umpire. The umpire refused to hear the testimony, and made his award upon the testimony laid before him by the arbitrators. The court, in that case, set aside the award. Lord *Denman*, C. J. remarks, that it was important to have it understood, that the umpire, as well as the arbitrators, ought to hear and see the witnesses. In that case, it was the more necessary, as there was a conflict of testimony. The objection to a different course may be waived ; but more complete proof of waiver should be given than appeared in that case. In re *Salkeld* v. *Slater*, 12 *Adol. & Ell.* 767. (40 *E. C. L.* 189.)

From these cases, it may be inferred, that it is well settled in *England*, that if a party to a submission knows that an umpire has been appointed, and is acting under that appointment, and does not make a request to be heard, he will be considered as having waived his right to be heard, and cannot, on that account, set aside the award. He shall not, as was said by *Taunton*, J., be permitted to "lie by and take the chance of the award, and when disappointed, come to the court to set it aside, for the non-reception of evidence, which the umpire was never required to hear." In re *Tunno* v. *Bird*. But on the other hand, if he requests the umpire to hear the cause, especially in a case where there is conflicting testimony, and the umpire refuses, the award will be set aside. How it would be in a case like the one we now have under consideration, where the party had no knowledge of the appointment and proceedings of the umpire, until after the award has been made, does not appear to have been definitively settled, by the *English* courts.

It would seem from the cases reported, that a practice, to a considerable extent, exists, for the umpire to receive from

the arbitrators a statement of the testimony and claims of the parties, and to make his award from the information derived from them. And such, it is believed, has been the more usual course of proceeding in this state.

From the remarks made by the *English* judges, it would seem, that a re-hearing is not in all cases necessary. There may be no dispute about any of the facts, and yet the arbitrators may differ in opinion as to the legal inference to be drawn from them, and may wish the advice of some more competent person as to the conclusion to be drawn. In such case, justice would hardly seem to require a re-hearing of the whole testimony about which there is no difference of opinion. It would seem reasonable to leave the necessity for a re-hearing to the sound discretion of the arbitrators, unless where a re-hearing is expressly requested, by one of the parties ; and then it would become their duty to comply with such request.

But we do not deem it necessary to determine this precise question, in order to dispose of the case under consideration. Here was no umpire, by whose *sole* award the rights of the parties were to be concluded.

In the submission, it is provided, that in case the referees should not agree, they might select a third person, who, either individually or *in conjunction* with them, might determine the cause. The two referees, having heard the evidence, and examined the books and accounts of the parties, and differing only as to a part of the items, selected a third person to act, not as the sole umpire, but in conjunction with them. To him they exhibited the accounts of the parties, and the evidence and claims presented by them, as to those items ; and thereupon all the referees made and signed the award.

As the third referee, by the terms of the reference, was authorized to act conjointly with the others, if it became his duty to hear the parties upon the subject matter of the submission, it would seem to be the duty of the others to attend also—a ceremony altogether unnecessary, so far as the two first referees were concerned, unless some new light could be thrown by the parties upon the cause—which is not pretended.

The court also has found, that the arbitrators were guilty of no fraud, concealment or partiality, but acted in conform-

ity with what they believed their duty required, under the submission. It does not appear, that the plaintiff has in fact sustained any particular injury, or that either of the arbitrators is dissatisfied with the award.

It is said, however, to be a cardinal principle in the administration of justice, that a party to a cause shall have a day in court, and an opportunity for a full hearing. This is undoubtedly true. But the cases clearly show, that it is competent for him, either expressly or impliedly, to waive the privilege of a hearing, in any particular form. It is equally true, that where his rights are to be determined, by a tribunal not constituted by law, he ought to have a voice in the appointment of that tribunal. But it is competent for him to waive that privilege, and authorize others to make the appointment. So too, although he has a perfect right to be present at the trial of his cause, and to be heard in relation to it, yet he may, if he chooses, empower others to present it for him. If the fair inference to be drawn from the submission, is, that the parties did not contemplate a re-hearing upon the appointment of another referee, then the plaintiff has no ground for complaint. If he wished for such a hearing, he should so have said, when the cause was referred, or at any rate, before the award was made. Not having done so, but having lain by, until after the award has been made, he comes too late with the objection.

Under these circumstances, a majority of the court are of opinion, that sufficient cause is not shown for setting aside the award, and therefore advise the superior court to dismiss the bill.

In this opinion WILLIAMS, Ch. J., and STORRS and HINMAN, Js., concurred.

CHURCH, J. dissenting. The award, which is the occasion of this dispute, may have been entirely just, and it may operate harshly to set it aside. But it seems to me, that there is a principle involved here of no ordinary importance; and if there is not, I shall regret a public dissent from the opinion of my brethren.

I see nothing here to convince me, that *Wilcox*, who was called in to the decision, by the arbitrators, was a mere advi-

sory friend, whose opinion might be regarded or not, by his associates. He was either an umpire, or an arbitrator.

By the submission, the two arbitrators first selected, in case of disagreement, were authorized to select a third person, who, individually, or *in conjunction* with the arbitrators already chosen, should make an award. Under this power, without the knowledge of either party, the arbitrators called to their aid *Eben Wilcox*, not as umpire to determine the matter alone, but as arbitrator to act conjointly with them. Here then, were three arbitrators, with the same powers, to perform the same duties. There is no intimation in the submission, that these arbitrators, when acting together, were to act or decide on different principles. What was the duty of one, was the duty of all. In the admission of testimony, arbitrators are to be governed by the ordinary rules which govern courts; for these rules are founded on the established principles of justice and propriety. Arbitrators cannot proceed, without giving reasonable notice to the parties; nor can they, without the consent of parties, either expressed in the submission or otherwise, admit, in opposition to the rules of law, the testimony of parties, or interested witnesses; nor hear witnesses not under oath, nor hearsay testimony, &c. 1 *Sw. Dig.* 467.

Now, I am not persuaded, that this new arbitrator could, without authority given by the parties, proceed to an award, without a notice to them, nor without a hearing. He had no greater powers, in these respects, than his associates. No such power is expressed in the submission; none such can be inferred from the nature of the business entrusted to him. To enable him to decide correctly, it was as necessary that he should hear the proofs, as that the others should. How can it be inferred, that he, any more than the other arbitrators, should be governed by hearsay evidence, and evidence without oath too—the mere statement of his associates, probably as contradictory as their opinions had been?

The adjustment of controversies by arbitration, should be encouraged, but not at the expense of all the principles which have been considered essential in the discovery of truth. The whim and caprice of arbitrators, no more than of courts and juries, should not be permitted to come in the place of proof and careful judgment.

It is said, I know, that this is analogous to a case of um-pirage, and that an umpire may proceed to make an award upon the statement of the arbitrators, or may acquaint himself with the truth, in any other way. I am not prepared to acquiesce in this doctrine, if there be any such, unless by the terms of the submission, such power has been conferred upon him. In all the cases, it seems to be conceded, that the parties, or either of them, may be heard before the umpire, if they claim it. This concession presupposes the duty of the arbitrators or umpire, to give notice of the appointment of an umpire. In the present case, this was not done. Neither party knew that the arbitrators had disagreed; and neither knew of the appointment of *Wilcox*, as an arbitrator or umpire. Neither party, therefore, had it in his power, if he would, to be heard again. To hold an award made under such circumstances, to be binding, would be a subversion of the first principles of justice. In the case of *Peters* v. *Newkirk*, 6 *Cowen*, 106. the court say, "the right to notice was implied in the agreement to submit." Also, a principle, very analogous to the one I have adopted, seems to have been involved in the case of *Lutz* v. *Linthicum*, 8 *Peters*, 166. At any rate, I am unwilling to introduce a principle into our system of jurisprudence, which subjects the decision of causes to the operation of testimony altogether illegal and inadmissible, unless the parties have, very considerately, consented to be bound by it.